**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CR. No. C-10-264 |
| v. | § | (C.A. No. C-11-181) |
| | § | |
| JOSE ERLINDO PEREZ MEDRANO, JR., | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND ORDER DENYING
CERTIFICATE OF APPEALABILITY**

Pending before the Court is Jose Erlindo Perez Medrano, Jr.'s (Medrano) motion to

vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, and his memorandum

of law in support. D.E. 27.[1] Also before the Court are the government's combined  response

and motion to dismiss and defense counsel's affidavit. D.E. 40, 40-1, 41. Medrano did not

file a reply. For the reasons set forth herein, the Court denies Medrano's § 2255 motion. The

Court also denies him a Certificate of Appealability.

**I.  JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1]  Docket entry references are to the criminal case.

## II. BACKGROUND

Medrano was arrested on February 27, 2010, at the Falfurrias, Texas Border Check Point after Border Patrol Agents discovered 56 bundles of marijuana hidden among boxes of rotten grapefruit in Medrano's tractor trailer. D.E. 1. The gross weight of the marijuana was 772.4 kilograms. Id. After being advised of his Miranda rights, Medrano gave a statement that three weeks before, he was paid $17,000 to transport marijuana to Houston. Medrano claimed that on this trip he did not know that marijuana was in the trailer, even though this trip was set up by the same persons who paid him three weeks before. At the time of the stop, Agents noted that the trailer license plate did not match the bill of lading and the grapefruit was in very poor condition, some of it was moldy. Medrano claimed that he did not have a driver's license and had never had a commercial driver's license.

Medrano made his initial appearance in federal court two days after his arrest, and requested appointment of counsel. D.E. 2. Counsel was appointed that day. D.E. 4.

Three weeks after his arrest, Medrano was indicted in a single count indictment with possession with intent to distribute more than 100 kilograms of marijuana, approximately 707.44 kilograms, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). D.E. 8. Medrano was arraigned a week later. Minute Entry, March 31, 2010.

Medrano pled guilty pursuant to a written plea agreement in May 2010. D.E. 15, 16. In exchange for Medrano's guilty plea, the government agreed to recommend that Medrano receive maximum credit for acceptance of responsibility and to recommend sentencing within the applicable guideline range. Id. at ¶ 2. The plea agreement advised Medrano that,

the sentence will be determined with reference to the *United States Sentencing Commission's Guidelines Manual* (U.S.S.G.). Defendant acknowledges and agrees that the Court may impose any sentence up to and including the statutory maximum, and that the sentence to be imposed is within the sole discretion of the Court in accordance with the Sentencing Reform Act of 1984, 18 USC § 3553(a)(1) and (2) and § 3661. . . .

Id. at ¶ 6. During rearraignment, Medrano testified that he understood the charges against him, reviewed the indictment with counsel, was satisfied with counsel's services, read and understood his plea agreement, understood the minimum and maximum sentence applicable to his indictment, understood the process by which his sentence would be determined by the Court, had the sentencing guidelines explained to him by counsel, and denied that he had been promised a specific sentence. D.E. 33 at 5-6, 8-10. He agreed with the factual recitation by the government. D.E. 33 at 14.

After rearraignment, the Court ordered the Probation Department to prepare a Presentence Investigation Report (PSR). D.E. 17. Using the 2009 Guidelines Manual, the Probation Department calculated Medrano's base offense level to be 30 based upon the quantity of drugs seized. D.E. 19 at ¶ 30. Medrano received credit for acceptance of responsibility resulting in a total offense level of 27. Id. at ¶¶ 18-19. Medrano was also subject to sentencing as a Career Offender based upon his criminal history, which trumped the offense calculation based upon drug quantity. Id. at ¶ 20. His resulting base offense level was 34. He received credit for acceptance of responsibility, which reduced his total offense level to 31.

Medrano had 17 criminal history points and was assessed 2 recency points for a criminal history Category of VI. D.E. 19 at ¶¶ 37-39. Medrano's sentencing range was 188 to 235 months imprisonment, with a statutory minimum sentence of 5 years imprisonment. Id. at ¶¶ 62-63. Medrano's counsel filed objections to the PSR in which he raised factual objections to a number of paragraphs. D.E. 18.

Sentencing was held on June 23, 2010. D.E. 154. The Court overruled the objections to the PSR. D.E. 34 at 5-13. Medrano was sentenced to 200 months in the Bureau of Prisons, ten years supervised release, and a $100 special assessment. D.E. 34 at 23, 28. After sentencing Medrano, the Court made the following findings,

> 9 The Court has chosen the sentence on recommendation
> 10 of the United States Attorney's Office, within the guideline
> 11 range, which the parties agree has been properly calculated.
> 12 The Court has taken the finding that the Defendant is a career
> 13 criminal. The Court will further find that the Defendant's
> 14 behavior has been serious and violent and that the additional
> 15 reason for the long term is his criminal history and the kinds
> 16 of convictions, not just the length of them. But the Court
> 17 also has imposed a ten-year supervision term for those very
> 18 same reasons.

Id. at 27. The Court advised Medrano of his right to appeal. Id. at 27-28.

Judgment was entered on the docket on July 23, 2010. D.E. 24. Medrano did not appeal. He filed his motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255 on May 31, 2011. D.E. 27. It is timely.

### III.  MOVANT'S CLAIMS

Medrano asserts several claims. First, he claims appointed counsel was ineffective because he operated under a conflict of interest. Medrano claims that his defense counsel in 2010 was the prosecutor in his 1990 drug trafficking conviction. D.E. 27 at p. 4. Ground Two complains that counsel improperly applied the sentencing guidelines before advising Medrano to plead guilty and Medrano would not have pled guilty had he known the true length of his sentence. Id. In his third ground, Medrano claims that counsel's failure to advise him that his previous convictions were time-barred caused him to plead guilty and he would not have done that had he known they were time-barred. Id

The government responds that Medrano's claims are conclusory and without merit. D.E. 40.

### IV.  ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in

a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

**B**.    **Standard for Claims of Ineffective Assistance of Counsel**

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).[2]

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter

---

[2]    The Fifth Circuit adopted the "any amount of jail time" test in United States v. Grammas, 376 F.3d 433, 439 (5th Cir. 2004). "This test originated from the Supreme Court's decision in Glover v. United States where the Court explained that any amount of additional jail time has significance under Strickland." Id. (internal citations omitted).

v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## C.   Claims of Ineffective Assistance Based Upon Conflict of Interest

Medrano alleges that defense counsel prosecuted him in 1990 for possession with intent to distribute marijuana in the Southern District of Texas. Medrano claims that by virtue of counsel's previous representation of the United States, counsel learned unspecified confidential information about Medrano in 1989 and 1990 that adversely affected counsel's performance on behalf of Medrano in 2010. He provides no evidence in support of that claim. The Court is aware that counsel was a federal prosecutor during that time period, which counsel acknowledges in his Affidavit. D.E. 40-1 at p. 1.

"The representation to which a defendant is entitled under the Sixth Amendment of the Constitution must be free from any conflict of interest." United States v. Burns, 526 F.3d 852, 856 (5th Cir. 2008) (citing United States v. Garcia-Jasso, 472 F.3d 239, 243 (5th Cir. 2006)). "[A] conflict exists when defense counsel allows a situation to arise that tempts a division in counsel's loyalties." Id. To prove a conflict, a defendant must demonstrate, "(1) that his counsel acted under the influence of an actual conflict; and (2) that the conflict adversely affected his performance at trial." Id. (citing United States v. Culverhouse, 507 F.3d 888, 892 (5th Cir. 2007)). An actual conflict of interest is one that "adversely affects counsel's performance." United States v. Infante, 404 F.3d 376, 392 (5th Cir. 2005). Only when counsel has to choose between "the divergent or competing interests of a former or current client" is there an actual conflict. Burns, 526 F.3d at 856.

7

The resolution of claims of conflict of interest is "highly fact dependent." <u>Burns</u>, 526 F.3d at 856. Medrano does not provide any facts. Medrano provides no evidence that supports his claim that counsel was a prosecutor in Medrano's 1990 federal prosecution.[3] He does not identify the nature of the confidential information his counsel, who was previously a government attorney, allegedly obtained during prosecution, nor does he specify in what manner the possession of that confidential information adversely affected counsel's representation of Medrano in 2010. Despite the liberal reading that this Court gives to *pro se* pleadings, Medrano is still required to state the factual basis of his claim. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. <u>United States v. Woods</u>, 870 F.2d 285, 288 n. 3 (5th Cir.1989); <u>see also</u> <u>United States v. Jones</u>, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim."). Medrano's claim that counsel operated under a conflict of interest is denied.

**D.     Claims of Ineffective Assistance at Sentencing**

　　1. *Failure to properly apply Sentencing Guidelines*

Medrano claims that counsel failed to properly apply the sentencing guidelines before he advised Medrano to plead guilty and that Medrano's plea was involuntary because Medrano did not know the true length of his sentence. The record does not support his claim. During his arraignment, Medrano was advised of the statutory minimum and mandatory

---

[3] Counsel does not recall whether he was involved in that prosecution. D.E. 44-1. A review of Medrano's original PSR reflects that Brett Grayson was counsel of record for the government.

sentences applicable to his indictment by the federal Magistrate Judge. He was advised that

he faced a minimum of 5 years imprisonment to a maximum of 40 years. ERO March 31,

2009, 09:07:16/09:07:59. Medrano testified that he understood. Id. at 09:09:06.

    At rearraignment, this Court reviewed the minimum and maximum punishment with

him,

> 17 THE COURT: The maximum possible punishment is a
> 18 period of 40 years in the penitentiary. There is a minimum
> 19 mandatory sentence of five years in the penitentiary. There is
> 20 no probation and no parole from this offense. There is a
> 21 maximum $2 million fine, a mandatory $100 special assessment.
> 22 I must impose a period of supervision of your
> 23 behavior of not less than four years. The period of
> 24 supervision can last as long as the rest of your life. If you
> 25 violate the terms and conditions of your supervision, you can
> 1 be returned to the penitentiary to serve sentences up to three
> 2 years. Do you understand that?
> 3 THE DEFENDANT: Yes, sir.
> 4 THE COURT: On the occasion of your sentencing, I
> 5 will calculate and consider the advisory guidelines of the
> 6 Sentencing Commission, together with all of the other
> 7 sentencing factors. I will consider the guidelines, any
> 8 departures from them, and all other matters required by the law
> 9 for me to consider.
> 10 Have you discussed with Mr. Berg how these guidelines
> 11 might be calculated?
> 12 THE DEFENDANT: Yes, sir, I have.
> 13 THE COURT: These guidelines are not mandatory, but
> 14 they do play an important part of your sentencing. Do you
> 15 understand?
> 16 THE DEFENDANT: Yes, sir.

D.E. at 8-9. Later during rearraignment, Medrano testified that no one had promised him

what his sentence would be and that it was his decision to plead guilty. Id. at 9-10, 11.

Additionally, Medrano's plea agreement advised him that his sentence would be determined

solely by the Court (D.E. 16 at ¶ 6) and any estimate of his probable sentence was "a prediction, not a promise . . ." Id. at ¶ 7.

Medrano does not specify the manner in which counsel allegedly misapplied the guidelines before rearraignment. Medrano does not identify the expected sentence that counsel allegedly advised him he would receive. Like Medrano's previous claim, this one is also lacks sufficient factual detail to state a constitutional violation. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. Woods, 870 F.2d at 288 n. 3.

### 2. *Failure to advise of time-barred convictions*

Medrano had significant criminal history going back to 1988. He had three unscored assault and aggravated assault convictions from 1989. He was incarcerated from 1990 until 1995 when he was placed on supervised release from his 1990 federal drug trafficking conviction. His supervised release was revoked twice and he was sentenced to an additional 36 months in the Bureau of Prisons. After Medrano was released from the Bureau of Prisons in 1995, he was convicted of aggravated sexual assault of a child. In 2006, he was convicted of attempted sexual assault. In all, his scored criminal history resulted in criminal history Category VI. Even if Medrano had known that his three 1989 convictions would not count against him, that information could not have affected his decision to plead guilty because his post-1989 criminal conduct was extensive and caused him to qualify as a career offender. Even if counsel did not advise Medrano before rearraignment that his oldest conviction would not count against him, Medrano cannot show prejudice from counsel's alleged failure.

See Armstead, 37 F.3d at 210.

**D.     Claim That Plea Was Involuntary**

Medrano claims that counsel's alleged errors related to his projected sentence led him to plead guilty, and but for counsel's deficiencies, he would not have pled guilty. D.E. 27 at Grounds Two and Three. This Court has determined that Medrano's claims of ineffective assistance do not have merit.

At the time Medrano pled guilty, he testified that, 1) he understood his right to counsel and expressed satisfaction with counsel, 2) he admitted no one had promised him what sentence he would receive, 3) he read and understood his plea agreement, 4) he understood the sentencing range, 5) his plea was voluntary, and 6) he generally understood the process of sentencing. D.E.33 at 5, 8-10.

Medrano's testimony at rearraignment carries a strong presumption of verity. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977))("Solemn declarations in open court carry a strong presumption of verity."); United States v. Cothran, 302 F.3d 279, 284 (5th Cir. 2002) ("we give the statements during the colloquy greater weight than we give unsupported, after-the-fact, self-serving revisions"). Based upon this record, the Court finds that Medrano's plea was voluntary.

**V.   CERTIFICATE OF APPEALABILITY**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28

U.S.C. § 2253(c)(1)(A). Although Medrano has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Medrano is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution

of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Medrano's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 27) is DENIED. He is also denied a Certificate of Appealability.

Ordered this 28th day of February 2012.

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE